IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BUSINESS LENDERS, LLC

v.                                                                 CIVIL NO. L-02-2092

DAMON Z. BELLAMY-BEY, ET AL.

## MEMORANDUM

Pending are (i) *pro se* defendant Damon Z. Bellamy-Bey's ("Bellamy-Bey") Exception to Foreclosure Sale and Request for a Hearing ("Exceptions") and (ii) Business Lenders, LLC's ("Business Lenders") Motion for Emergency Hearing. The Court is familiar with this case and no hearing is necessary. See Local Rule 105.6 (D. Md. 2001). For the reasons stated below, the Court will, by separate Order filed this date, (i) DENY Business Lenders's Motion AS MOOT; (ii) OVERRULE Bellamy-Bey's Exceptions; and (iii) RATIFY the foreclosure sale.

## I.   BACKGROUND

This dispute arises out of the default on a $300,000 Small Business Administration ("SBA") loan that the Defendants Bellamy-Bey and his company, Z'Lacod, Inc. ("Z'Lacod"), obtained from Business Lenders in order to operate Peachtree II Carwash. On January 10, 2001, Bellamy-Bey, for himself and Z'Lacod, executed a promissory note as security for the loan. The Defendants defaulted on the loan. (See Decl. of Stacey O'Sullivan, Vice President of Business Lenders).

Business Lenders sought relief in this Court under the confession of judgment clause contained in the promissory note. By Order dated July 3, 2002, United States Magistrate Judge Susan Gauvey directed the Clerk to enter judgment by confession in favor of Business Lenders. On

August 8, 2002, the undersigned entered judgment against the Defendants and closed the case

On July 18, 2002, trustees for Business Lenders, Jeremy Friedberg and Andrew Cole, ("Trustees") filed an Order to Docket Foreclosure on Property. On October 31, 2002, shortly after Business Lenders held a foreclosure sale at the carwash, Business Lenders learned that property was disappearing from the carwash. Business Lenders filed a motion for a temporary restraining order ("TRO") to prevent Bellamy-Bey and others from removing property from the carwash and to require Bellamy-Bey to return the property he had removed

On November 1, 2002, the Court held a hearing on the motion for a TRO. Shortly before the hearing began, an unidentified man appeared in the courtroom.[2] As described more fully in the Order attached hereto, the man stated that his name was Bells Naat Ra Jah-Bey ("Jah-Bey" and he denied that he was Bellamy-Bey

Jah-Bey claimed that he had loaned $9 million to Bellamy-Bey and that, as a result, he had a perfected first-priority interest in the carwash and any related personal property  Because Jah-Bey was not a party to this case, the Court advised him that he would have to file a motion to intervene in order to participate in future proceedings.

On November 4, 2002, the Trustees filed with the Court a report concerning the foreclosure sale. On December 2, 2002, Jah-Bey, who had never moved to intervene or otherwise support his contention that he had lent $9 million to Bellamy-Bey, filed an Exception to Foreclosure Sale and Request for a Hearing. On July 30, 2003, the Court granted Business Lenders's Motion to Strike

---

[1] On September 3, 2002, Bellamy-Bey filed a motion to vacate the confessed judgment, alleging that Business Lenders made false and misleading statements, and that it forged Bellamy-Bey's signature on the loan documents. On July 30, 2003, the Court denied his motion because he provided no evidence to support his contentions.

he Trustees identified the man as Bellamy-Bey

2

Jah-Bey's exceptions.

Also on December 2, 2002, Bellamy-Bey filed an Exception to Foreclosure Sale and Request for a Hearing. On August 27, 2003, Business Lenders filed a Response to Bellamy-Bey's Exceptions. On November 19, 2003, Business Lenders filed a Motion for Emergency Hearing and/or Ruling on Ratification. Due to an oversight in the Clerk's Office, Bellamy-Bey's Exceptions were confused with Jah-Bey's Exceptions and not docketed. Bellamy-Bey's Exceptions have now been filed [Docket No. 47].[3]

## II. ANALYSIS

Although Bellamy-Bey sets forth thirty-three separate contentions, he basically argues that the foreclosure sale should be set aside for the following reasons:

(i) Business Lenders's demand for payment in cash violates public policy;

Defendants were current on their mortgage payments

the confessed judgment is invalid;

(iv) Business Lenders is not licensed or registered to do business in Maryland;

(v) the SBA Note attached to the Order to Docket Foreclosure is "bogus" and Business Lenders is not the holder in due course of the Note;

Business Lenders waived its rights to foreclosure;

Business Lenders has not shown "proof of funds used to make purchase;'

the foreclosure sale undermines the parties' reciprocal obligations under the master agreement; and

the foreclosure sale violates the Constitution

---

[3] Z'Lacod did not file a separate exception to the foreclosure sale. Because Z'Lacod is a corporation, it can participate in an action in federal court only through counsel. See Local Rule 101 (D. Md. 2001). Z'Lacod is not represented by counsel, meaning that it would lack standing to file exceptions to a foreclosure sale.

3

Before the Court addresses each argument in turn, the Court notes that Bellamy-Bey's allegations suffer from fundamental defects. The papers he attaches to his Exceptions are not copies of the contract documents. They are incomplete and not signed anywhere by Business Lenders. They are not the type of documents one would expect to see in a business loan. Instead, they appear to be generic business forms that one might purchase from a legal stationer. Furthermore, his legal arguments do not withstand minimal scrutiny and the authorities he cites do not support his legal contentions. Accordingly, these arguments can be disposed of in short order.

### A.   Business Lenders's Demand for Payment

Bellamy-Bey argues that Business Lenders's demand for payment in cash violates public policy. There is no merit to this argument. Business Lenders simply demanded payment in legal tender at the time the payment was due.

### B.   Defendants Were Not in Default

Although Bellamy-Bey maintains that the Defendants were current on their mortgage, he provides no evidence to support his contention. For example, he provides no proof, in the form of canceled checks or other bank records, that the Defendants made current payments to Business Lenders. Accordingly, the Court rejects Bellamy-Bey's claim.

### C.   Confessed Judgment

Bellamy-Bey sets forth arguments related to his Motion to Vacate the Confessed Judgment. The purpose of exceptions to a foreclosure sale, however, is to raise issues of irregularity in the sale of the property. Md. R. Sales of Prop. 14-305(d) (2003). Rather than asserting that the Trustees did not exercise reasonable care in selling the property, Bellamy-Bey again argues that the

confessed judgment should be set aside. His arguments, therefore, have no bearing on the ratification of the foreclosure sale.

### D.     Business Lenders Misled Defendants

Bellamy-Bey states that he was "mislead" by Business Lenders (a Delaware corporation) because it is not licensed or registered to do business in Maryland. He fails to explain Business Lenders's alleged misleading statements or actions. Moreover, Bellamy-Bey does not to point to any statute or case law that explains why such an assertion prohibits the foreclosure sale.

Although Bellamy-Bey's legal theory is unclear, he may be referring to § 7-301 of the Maryland Corporations and Associations Code. Under this section, an unqualified and unregistered foreign corporation cannot bring suit in Maryland if it engages in localized business activity in the state. Md. Code Ann., [Corps. & Ass'ns] § 7-301 (2002). The foreclosure suit, however, was brought by two individuals, Jeremy Friedberg and Andrew Cole, who were named as trustees. See Hardy v. Gibson, 133 A.2d 401, 405-06 (Md. 1957).

### E.     The SBA Note is Fraudulent

Bellamy-Bey alleges that Business Lenders is not the holder in due course of the SBA Note and that the Note attached to the Order to Docket Foreclosure is fraudulent. While he concedes that he was party to an SBA Note, Bellamy-Bey claims that the signature on the Note submitted by Business Lenders is not his. Bellamy-Bey does not produce a copy of the Note that he contends he did sign. Nor does he provide any evidence to suggest that the Note submitted by Business Lenders is a forgery. Accordingly, the Court finds no merit in Bellamy-Bey's claim.

### F.     Business Lenders Waived Its Rights to Foreclosure

Bellamy-Bey attaches to his Exceptions documents entitled "Notice of Adequate Assurance of Due Performance" and "Notice of Alleged Loan Dispute." In these documents, Bellamy-Bey

5

states that: (i) he paid the amount of the loan in full; and (ii) if Business Lenders finds otherwise, then Business Lenders must provide him with certain information. Bellamy-Bey argues that because Business Lenders failed to provide such information, it waived its rights to foreclosure. Nothing in the SBA Note or applicable law implies that failure to respond to Bellamy-Bey's documents constitutes waiver of foreclosure rights

### G. Business Lenders Must Provide Proof of Funds

Bellamy-Bey contends that Business Lenders must show "proof of funds used to make purchase" at the foreclosure sale. Nothing in the Maryland rules regulating sales of property suggests that Business Lenders must provide such documentation. Moreover, the burden is not on the Trustees to show that the sale was valid, but, rather, the burden is upon the Bellamy-Bey to show that the sale was invalid. J. Ashley Corp. v. Burson, 750 A.2d 618, 621 (Md. 2000).

### H. The Foreclosure Sale is a Breach of Contract

By ratifying the foreclosure sale, Bellamy-Bey alleges that the Court is aiding Business Lenders in breaching their "master agreement." The alleged "master agreement" (Ex. A), however, is one of the ostensibly fabricated documents that lacks the signature of a representative of Business Lenders or any other indicia of authenticity   Accordingly, Bellamy-Bey's arguments must be rejected.

### I. Constitutional Violations

Finally, Bellamy-Bey argues that (i) the "seizure" of his promissory note violates the Fourth Amendment; (ii) the use of a foreclosure procedure violates his rights under the Fifth Amendment; and (iii) Business Lenders's "usury and extortion practices" violate the Thirteenth Amendment because they "have put Defendant in involuntary servitude and are acts to repress Defendant from efforts to gain actual freedom

There is no merit to these arguments. A private foreclosure on real property does not implicate the Fourth Amendment, which only protects individuals from governmental action. Similarly, the Fifth Amendment's due process clause is a limitation on governmental, not private, action. Here, the power of foreclosure sale was created, not through governmental enactment, but by the parties' private agreement. As for the Thirteenth Amendment, the United States Supreme Court has rejected a broad interpretation of "involuntary servitude" and has interpreted the phrase as applying to situations involving the compulsion of services "by the use or threatened use of physical restraint or injury, or by the use of threat of coercion through law or the legal process." United States v. Kozminski, 487 U.S. 931, 948 (1988). Bellamy-Bey does not attempt to describe the practices of Business Lenders that he contends are coercive. Nor does he provide any evidence to suggest that he entered into the SBA loan under threats of violence. Accordingly, his constitutional claims fail

## III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order filed this date, DENY AS MOOT Business Lenders's Motion for Emergency Hearing, OVERRULE Bellamy-Bey's Exception to Foreclosure Sale and RATIFY the foreclosure sale.

Dated this 9TH day of January, 2004

_B. Legg_
Benson Everett Legg
Chief Judge